540 So.2d 850 (1989)
FLORIDA LEAGUE OF CITIES, INC., and City of St. Petersburg, Appellants,
v.
DEPARTMENT OF INSURANCE AND TREASURER and Florida State Lodge, Fraternal Order of Police, Appellees.
Nos. BS-373, BS-397.
District Court of Appeal of Florida, First District.
February 28, 1989.
*852 James R. Wolf, Tallahassee, for appellant Florida League of Cities, Inc.
Michael S. Davis, City Atty., and Laura Bamond, Asst. City Atty., St. Petersburg, for appellant City of St. Petersburg.
Gabriel Mazzeo, Tallahassee, for appellee Dept. of Ins. and Treasurer.
Charles A. Salerno, Tallahassee, for appellee Florida State Lodge, Fraternal Order of Police, and for amicus curiae, Florida State Fireman's Ass'n.
ZEHMER, Judge.
This consolidated appeal arises out of an administrative proceeding initiated by the Florida League of Cities (League) and the City of St. Petersburg (City) pursuant to section 120.54, Florida Statutes (1985), to challenge the validity of more than two dozen rules proposed for adoption by the Department of Insurance (Department). The proposed rules, which are based upon 1986 amendments to chapters 175 and 185, Florida Statutes, and amend chapters 4-14 and 4-54, Florida Administrative Code, affect numerous retirement and pension plans for municipal firefighters and police officers in St. Petersburg and other Florida municipalities. The affected plans were created pursuant to special acts authorizing local option pension and retirement plans. The hearing officer's final order found no merit in appellants' allegations that the proposed rules were arbitrary and constituted an invalid exercise of delegated legislative authority and upheld the validity of all but two of the proposed rules.[1] The final order also denied appellants' challenge to the sufficiency of the Department's economic impact statements accompanying the proposed rules. We reverse the appealed order in part because the hearing officer erred in determining the applicable law in several material respects.

I.

THE FACTS
Chapter 175, Florida Statutes, regulates firefighters' retirement systems and pension *853 plans in the state of Florida, including firefighters employed by municipalities. Chapter 185 regulates retirement systems and plans for police employed by municipalities. Both chapters authorize two types of retirement or pension plans. One type is known as "chapter plans" and the other as "local law plans." Chapter plans are those created under chapters 175 and 185, and the provisions of those chapters are controlling on the plans' terms, conditions, and benefits.[2] Local law plans are those created either by special act of the legislature or by municipal ordinance and contain provisions relating to terms, conditions, and benefits that may substantially differ from many requirements found in chapters 175 and 185 for chapter plans.[3] Both types of plans receive funds collected pursuant to a premium tax levied on fire and property insurance policies sold in Florida and administered by the Department.
Effective October 1, 1986, chapter 175 was substantially amended by chapter 86-41, Laws of Florida, and chapter 185 was similarly amended by chapter 86-42, Laws of Florida. In general, these amendments made significant changes in various requirements applicable to firefighter and police pension and retirement plans. Some requirements in these chapters are expressly applicable to both types of plans, while others are expressly applicable only to one or the other type of plan. Many of the sections of these chapters are silent as to their applicability to local law plans. Legislative intent has been further clarified by the following language in section 1, ch. 86-41, amending section 175.021:
[The legislature] intends, in implementing the provisions of s. 14, Art. X of the State Constitution as they relate to municipal firefighters' pension trust fund systems and plans, that such retirement systems or plans be managed, administered, operated, and funded in such manner as to maximize the protection of the firefighters' pension trust funds. This chapter hereby establishes minimum standards for the operation and funding of municipal firefighters' pension trust systems and plans.
Similar language was added by section 1, ch. 86-42, to section 185.01 regarding police officers' trust funds.
To implement the new statutory changes, the Department proposed numerous amendments to rules in chapters 4-14 and 4-54 of the Florida Administrative Code. In the November 7, 1986 edition of the Florida Administrative Weekly, the Department published notice of a public hearing on December 2, 1986, to consider the adoption of such rules. The hearing was held and the rules, with certain modifications and deletions, were adopted substantially as proposed.
Prior to that hearing, on November 26, 1986, the League filed its Petition for Administrative Determination of the invalidity of certain of the proposed rules.[4] The petition *854 alleged that the identified rules exceeded the Department's legislatively delegated authority and that the Department had failed to provide an adequate economic impact statement in violation of section 120.54(2)(b). Shortly thereafter, the City, after being granted leave to intervene as a petitioner in the proceeding initiated by the League, filed its petition similarly challenging the validity of most of the same rules that the League challenged. The Fraternal Order of Police was allowed to intervene as a respondent in January 1987.
The matter was referred to a DOAH hearing officer, who held an evidentiary hearing on January 12, 1987. The parties filed stipulations that reduced the number of proposed rules being challenged and agreed to the admissibility of certain joint exhibits. Appellants presented the testimony of two expert witnesses, while appellees presented none. The hearing officer, with the exceptions previously noted,[5] ruled that petitioners had "not sustained their burden of proof" and upheld the validity of the challenged rules.[6]

II.

STATUTORY PROVISIONS APPLICABLE TO LOCAL LAW PLANS
On this appeal, the City and the League maintain their attack on the invalidity of the following rules (except for the rules identified by asterisk):

Chapter 4-54 Chapter 4-14
 4-54.024(3) 4-14.033(3)
 4-54.027 4-14.036
 4-54.029(2) 4-14.037(2)
 4-54.033(2)[*] 4-14.040(2)
 4-54.034 4-14.041
 4-54.035
 4-54.036 4-14.042
 4-54.037 4-14.043
 4-54.039 4-14.045
 4-54.040[*] 4-14.046
 4-54.041 4-14.047
 4-54.045 4-14.051
 4-54.047
 4.54.048(3)(5)(6)(7) 4-14.053(3)(5)(6)(7)
 4-54.049 4-14.054

The statutory provisions and amendments in chapters 175 and 185 are substantially similar, and the proposed rules in chapters 4-14 and 4-54 implementing the amendments are correspondingly similar. In the interest of judicial economy, the parties, with the express approval of the hearing officer, stipulated that the case would be presented only on the basis of the proposed rules in chapter 4-54 (relating to firefighters) and that, while no evidence would be presented with respect to the proposed rules in chapter 4-14 (relating to police officers), any determination of invalidity of a proposed rule in chapter 4-54 would be treated as invalidating the corresponding rule in chapter 4-14. Therefore, further discussion in this opinion will be limited to the statutory amendments in chapters 175, Florida Statutes, and proposed rule changes in chapter 4-54, Florida Administrative Code. Our decision in respect to these statutes and rules, consistent with the parties' stipulation as approved by the hearing officer, should be treated as equally applicable to the corresponding statutory and rule provisions in chapters 185 and 4-14, respectively.

A.

The Department's Construction of the 1986 Amendments
The basic issue before us, as it was before the hearing officer, is what provisions of chapter 175 became applicable to local law plans by reason of the 1986 statutory amendments. The League and the City's rule challenge focuses on the Department's interpretation of the amendments as directing, by implication, that local law plans henceforth meet all minimum requirements set forth in chapter 175 as amended by chapter 86-41, whether or not the amending statutes contain a provision expressly *855 making the specific requirement applicable to local law plans. The City and the League complain that the Department's interpretation of the statutory amendments, when applied to local law plans under the proposed rules, will significantly burden existing local law plans beyond any expressed legislative intent, and will add substantially to the financial cost of such plans to the affected municipalities. Appellants contend that the "proposed rules are an attempt to preempt municipal authority over local law plans where no express preemption authority exists" in violation of Article VIII, section 2 of the Florida Constitution, and section 166.021(1), Florida Statutes (League's Initial Brief, p. 16).
All parties agree that prior to the 1986 amendments, certain provisions in chapter 175 were applicable to chapter plans alone, certain provisions were applicable to local law plans, and certain provisions were applicable to both types of plans. In general, determining which provisions of that chapter were applicable to local law plans was essentially dependent upon whether an express statutory provision made it applicable to local law plans. After the 1986 amendments, the Department took a different view regarding the applicability of all minimum standard provisions in that chapter to local law plans, primarily based upon the added language of legislative intent in section 175.021, quoted above. § 175.021, Fla. Stat. (1986 Supp.). Accordingly, the Department promulgated the proposed rules to implement this new construction of chapter 175.
In determining whether a particular provision in chapter 175 was now applicable to local law plans, the Department applied, and the hearing officer approved, a three-pronged test described as follows by the hearing officer in the final order:
(1) Determine if Section 175.321, Florida Statutes, by its own terms makes a particular provision applicable to local law plans. If it does, then that provision can be applied by statute or rule to local law plans.
(2) Determine if the particular statutory provision in question, by its own terms, states its application to local law plans. If it does, it can be applied by statute or rule to local law plans.
(3) Determine if a particular statutory provision sets forth a "minimum standard" for local law plans in their operation, management, administration and funding as prescribed by Article X, Section 14, Florida Constitution, and if so determine further if such minimum standard conflicts with any other minimum standard in chapter 175 prior to passage of Chapter 86-41, Laws of Florida. If the provision does set forth such a minimum standard, and further if that standard does not conflict with any prior standard in Chapter 175, the provision can be applied by statute or rule to local law plans.
(R. 512). The hearing officer found this test to accord with general rules of statutory construction, and approved it primarily on the generic proposition that, "The contemporaneous construction by rule of a newly enacted statute by the agency responsible for its implementation is also given deference on review of such construction or interpretation. Andrews v. Borden Co., 143 So.2d 556 (Fla.2d DCA 1962)." (R. 514) The hearing officer concluded that the Department's construction of section 175.021 had not been shown to be unreasonable, as the proposed rules implementing its salutary language
appear to be reasonable and necessary in order for the Department to carry out its responsibility of insuring, through the application of statutory minimum standards, that local plans are managed, administered, operated and funded in such a manner as to maximize protection of pension trust funds. For example, Sections 175.171, 175.181, 175.191 and 175.231, Florida Statutes, upon which these proposed rules are based in part, establish minimum standards which clarify and define Section 175.351(1), and are thereby applicable to both chapter and local law funds... .
(R. 516).
Appellants do not take issue with the first two prongs of the Department's test, *856 as both propositions are consistent with the Department's and appellants' prior interpretation and application of chapter 175 to local law plans, and comply with the doctrine of preemption hereinafter discussed. Appellants argue, however, that the Department exceeded its delegated statutory authority in applying the third prong of the test, based solely upon implications from the quoted statements of legislative intent in section 175.021 as amended in 1986, so as to make applicable to local law plans the various procedural and substantive requirements in chapter 175 not theretofore considered applicable to such plans.

B.

Express Preemption of Municipal Power
We agree that the hearing officer erred in applying the third prong of the Department's test as the method for determining which provisions of chapter 175 are now applicable to local law plans. That prong fails to give effect to Article VIII, section 2 of the Florida Constitution and section 166.021, Florida Statutes, requiring express preemption of municipal legislative authority.
Article VIII, section 2(b) provides that municipalities "shall have governmental, corporate and proprietary powers to enable them to conduct municipal government, perform municipal functions and render municipal services," and explicitly states that such municipalities "may exercise any power for municipal purposes except as otherwise provided by law." The legislature has given full effect to this constitutional grant of authority, providing by statute that municipalities "may exercise any power for municipal purposes, except when expressly prohibited by law." § 166.021(1), Fla. Stat. (1987) (emphasis added). This broad municipal power embodies the concept that both the municipality and the state may legislate upon the same subject matter, so the legislature has likewise provided that municipalities "may enact legislation concerning any subject matter upon which the state Legislature may act" subject to specified exceptions including, "Any subject expressly preempted to a state or county government by the constitution or by general law." § 166.021(3), Fla. Stat. (1987). To secure judicial recognition of this broad grant of legislative powers to municipalities, the legislature further provided in section 166.021(4):
The provisions of this section shall be so construed as to secure for municipalities the broad exercise of home rule powers granted by the constitution. It is the further intent of the Legislature to extend to municipalities the exercise of powers for municipal governmental, corporate, or proprietary purposes not expressly prohibited by the constitution, general or special law, or county charter and to remove any limitations, judicially imposed or otherwise, on the exercise of home rule powers other than those so expressly prohibited.

(Emphasis added.)
It is well settled that this constitutional and statutory grant of legislative power enables a municipality to "enact legislation on a topic already visited by state law except in those areas where the subject matter has been expressly preempted by the constitution or state law or when the ordinance directly conflicts with state law." State v. Redner, 425 So.2d 174, 175 (Fla.2d DCA 1983). The concept embodied in section 166.021(3)(c) recognizes that "a municipality's power to legislate is limited where the subject has been expressly pre-empted to the state" and that, "Express pre-emption requires a specific statement; the pre-emption cannot be made by implication nor by inference." Board of Trustees of City of Dunedin Municipal Firefighters Retirement System v. Dulje, 453 So.2d 177, 178 (Fla.2d DCA 1984). As explained in Edwards v. State, 422 So.2d 84, 85 (Fla.2d DCA 1982), "An `express' reference is one which is distinctly stated and not left to inference."

C.

Applicable Principles of Statutory Construction
In reviewing the Department's construction of the statutes and the validity of the *857 rules promulgated thereunder, the following legal precepts are pertinent:
The challenging party bears a heavy burden of showing "that the agency adopting the rule has exceeded its authority, that the requirements of the rule are not appropriate to the ends specified in the legislative act, and that the requirements contained in the rule are not reasonably related to the purpose of the enabling legislation but are arbitrary or capricious"; however, an agency rule that is found to exceed the agency's statutory authority is invalid. Grove Isle, Ltd. v. State Department of Environmental Regulation, 454 So.2d 571, 573, 575 (Fla. 1st DCA 1984). It is "axiomatic that an administrative rule cannot enlarge, modify or contravene the provisions of a statute" and that "a rule which purports to do so constitutes an invalid exercise of delegated legislative authority." State Department of Business Regulation v. Salvation Limited, Inc., 452 So.2d 65, 66 (Fla. 1st DCA 1984).
State Board of Optometry v. Florida Society of Ophthalmology, 538 So.2d 878, 884 (Fla. 1st DCA 1988). In Department of Professional Regulation, Board of Medical Examiners v. Durrani, 455 So.2d 515 (Fla. 1st DCA 1984), we said:
The well recognized general rule is that agencies are to be accorded wide discretion in the exercise of their lawful rulemaking authority, clearly conferred or fairly implied and consistent with the agencies' general statutory duties... . An agency's construction of the statute it administers is entitled to great weight and is not to be overturned unless clearly erroneous... . Moreover, the agency's interpretation of a statute need not be the sole possible interpretation or even the most desirable one; it need only be within the range of possible interpretations... .
455 So.2d at 517. This does not mean, however, that the court must always approve any possible construction by the agency. As we observed in State Board of Optometry:
We recognize that in Durrani we indicated that the court must approve the agency's selection of any possible interpretation of the enabling statute. But in so stating, we did not mean that any conceivable construction of a statute must be approved irrespective of how strained or ingeniously reliant on implied authority it might be; rather, as made clear in the cases cited in Durrani in support of the stated proposition, only a permissible construction by the agency that comports with and effectuates discerned legislative intent will be sustained by the court. Department of Administration v. Nelson, 424 So.2d 852 (Fla. 1st DCA 1982); State Department of Health and Rehabilitative Services v. Framat Realty, Inc., 407 So.2d 238 (Fla. 1st DCA 1981). See also Public Employees Relations Comm'n v. Dade County Police Benevolent Ass'n, 467 So.2d 987, 989 (Fla. 1985) ("a reviewing court must defer to an agency's interpretation of an operable statute as long as that interpretation is consistent with legislative intent and is supported by substantial, competent evidence"). As we made quite plain in Schoettle v. Department of Administration, 513 So.2d 1299, 1301 (Fla. 1st DCA 1987), "statutory construction is ultimately the province of the judiciary."
538 So.2d at 885. We also stated in Schoettle:
The general rule is that the manifest intent of the Legislature will prevail over the literal import of the words used by it. As recognized by the Florida Supreme Court in Barrington v. State, 145 Fla. 61, 199 So. 320, 323 (1940), quoting from Commonwealth v. Henry, 229 Mass. 19, 118 N.E. 224 [1918], L.R.A. 1918B, 827:
The statute must be read with reference to its manifest intent and spirit and cannot be limited to the literal meaning of a single word. It must be construed as a whole and interpreted according to the sense in which the words are employed, regard being had to the plain intention of the Legislature.
513 So.2d at 1302. It is not for the court to say which construction of the statutes  *858 that urged by the Department or that urged by the City and League  is preferable; the court is concerned only with statutory authority for the rule, and our function is to determine whether either or both are permissible constructions. Department of Health and Rehabilitative Services v. Florida Psychiatric Society, Inc., 382 So.2d 1280, 1285 (Fla. 1st DCA 1980).
We conclude that the third prong of the Department's test and its construction of chapter 175 resulting from its application are not legally permissible for the following reasons.

D.

Invalidity of the Department's Test
The third prong of the Department's test is predicated upon an inference drawn from the 1986 amended statement of legislative intent incorporated in section 175.021. Solely by implication, the Department now construes chapter 175 as requiring that each section containing minimum standards, so long as they can be said to relate to the management, administration, operation and funding of a pension plan in a manner that will maximize the protection of those funds, must be applied to local law plans even though the provisions of chapter 175 are silent as to whether the standard is applicable to local law plans. Therefore, to sustain the Department's position, we must determine that the language of the 1986 amendment to section 175.021, especially the last sentence,[7] can be permissibly interpreted, in light of the doctrine of express preemption, to mean that all minimum standards contained in chapter 175 are now intended to be applicable to both chapter plans and local law plans unless specified otherwise, as this is the manifest effect of applying the third prong of the Department's test to that chapter.
Prior to 1986 the legislature had expressly stated which provisions in chapter 175 were applicable to local law plans. Section 175.321 stated that "sections 175.101-175.121 and 175.131-175.151 shall be applicable in relation to all municipalities which now have or hereafter establish a municipal firefighters pension trust fund or a pension fund for firefighters." Section 175.351 stated in relevant part that in order for municipalities having their own pension plans for firefighters "to participate in the distribution of tax funds established in ss. 175.101-175.121 and 175.131-175.151, their pension funds must meet each of the following standards... ."
In making the 1986 amendments, the legislature continued to identify specifically which of the provisions in chapter 175, as amended, would be applicable to local law plans. For example, section 3, chapter 86-41, amended section 175.071 to impose new restrictions and procedures on the investment of fund assets. It specifically stated in paragraph (1)(b)4.b. that, "This paragraph shall apply to all boards of trustees and participants" and then set forth specific means whereby trustees of local law plans created pursuant to section 175.351 could "vary the investment procedures herein" within certain limitations. Section 16, chapter 86-41, amended section 175.291 to allow trustees of both chapter plans and local law plans to employ independent counsel, expressly stating, "This section shall specifically apply to all funds receiving state moneys pursuant to this chapter." Even more significantly, section 20, chapter 86-41, substantially amended section 175.351, which set forth the minimum standards and procedures applicable to local law plans, but said nothing about making the minimum standards and procedures contained in other sections of chapter 175 pertaining to chapter plans applicable to such local law plans with but one exception: sections 175.351(15) and 175.351(16) expressly provided that section 175.061 would be applicable to local law plans in the described circumstances.
It is readily apparent, therefore, that the legislature explicitly identified, by reference to specific sections in chapter 175, which standards and procedures it expressly preempted to the state, both before and *859 after the 1986 amendments. In doing so, the legislature complied with the preemption requirements in section 166.021. Had the legislature intended that all minimum standards and procedures set forth in chapter 175, including those silent as to local law plans, be applied to such local plans, it most assuredly would have expressly said so.
The construction urged by the League and the City is consistent with the interpretation given to chapter 175 prior to 1986 and accords with the doctrine of preemption, while the new construction applied by the Department does not. Even after the 1986 amendments, chapter 175 unquestionably continued to contemplate that both the state and the municipalities would remain empowered to legislate independently with respect to firefighters' pension plans because it preserved the distinction between chapter plans and local law plans. Section 175.021, as amended, did not contain any language that addressed the express preemption requirement of section 166.021(3)(c); yet both the Department and the hearing officer have necessarily relied upon implications based on the amended statutory intent language to uphold the Department's new construction of the chapter and the proposed rules implementing that construction.
We find no legislative intent in the 1986 amendments to alter the prior construction and application of the various provisions in chapter 175 to chapter plans and local law plans other than in those specific instances containing express provision for application to local law plans.
We conclude that the lack of explicit language expressly directing that all minimum standards in chapter 175 be applied to local law plans precludes the construction of chapter 175 in the manner prescribed by the third prong of the Department's test. The hearing officer erred in approving the Department's new construction of chapter 175 based upon that invalid test, and consequently erred in approving the validity of many of the proposed rules.

III.

VALIDITY OF THE PROPOSED RULES
We now turn to the specific rules challenged by appellants to determine in what respects they may be based upon a permissible or impermissible construction of the statutory provisions in chapter 175 and whether they are invalid as contended by appellants.

Rule 4-54.045
Rule 4-54.045 undertakes to specify which sections of chapter 175 are applicable to local law plans and which sections are applicable to chapter plans by interpreting the language in section 175.321. That section was not amended in 1986 and states in part:
Sections 175.101-175.121 and 175.131-175.151 shall be applicable in relation to all municipalities of the state which now have or hereafter establish a municipal firefighters' pension trust fund or a pension fund for firefighters, regardless of whether the municipality shall fall within the classification of s. 175.041 [chapter plans] and have its municipal firefighters' pension trust fund established under the provisions thereof, or whether the pension fund of the municipality shall exist under other general or special laws of the state or a local ordinance [local law plans]. The remaining sections of this act, which apply specifically to the creation of a board of trustees, define its powers, and establish a municipal firefighters' pension trust fund in each municipality, as well as such sections as define the person who shall be entitled to a pension out of such fund and the amount thereof, govern the conditions upon which such pensions shall be allowed, and define the duties of the officers of those municipalities in relation to such fund, shall not apply to any municipality which now has a municipal firefighters' pension trust fund or municipal pension fund for firefighters and policemen [local law plans].
(Emphasis added.) The Department's Answer Brief states, at page 21, that section 175.321, as it read during the period 1963-1986, *860 made the following sections of chapter 175 inapplicable to local law plans: sections 175.061, 175.071, 175.041, 175.091, 175.162, 175.181, 175.191, 175.251, 175.261, 175.291, and 175.301. We agree with this construction of section 175.321. As section 175.321 was not amended by chapter 86-41, it must be concluded that the legislature did not intend to change the effect of this statute by the 1986 amendments.
The League and the City object to the validity of two portions of proposed rule 4-54.045. They challenge paragraph (2), which states, "The `act' to which reference is made in Section 175.321 Florida Statutes: `The remaining sections of this "act" ...,' is Chapter 63-249, Laws of Florida." They also object to paragraph (4), which provides, "The remaining sections, subsections and paragraphs found in Chapter 175, Florida Statutes, are applicable as set forth in such section, subsection or paragraph of Chapter 175, Florida Statutes, and these rules" [emphasis added]. Both objections are based on the proposition that the Department cannot by rule make statutes applicable to local law plans that are not expressly made applicable by chapter 175.
The correctness of that proposition is obvious. Undoubtedly "these rules" cannot lawfully extend the Department's authority beyond that set forth in the statute. However, we construe this rule as only requiring compliance with valid rules of the Department. Since we have, by this decision, invalidated those portions of the proposed rules that have undertaken to exceed statutory authority, we do not see how this proposed rule exceeds delegated legislative authority. While we do not disagree that paragraph (2) correctly identifies "this act" referred to in section 175.321 as chapter 63-249, we doubt that the proposed rule can and should be read as not including legislative amendments to that act, such as chapter 86-41. As so construed, we find nothing improper about this rule and affirm the hearing officer's order rejecting appellant's challenges to it.

Rule 4-54.024(3)
Rule 4-54.024 relates to investments and provides in subsection 54.024(3) that, "The performance appraisal requirements of Section 175.071(5), Florida Statutes, applies to all Chapter Funds and Local Law Funds." The rule is said to implement section 175.071. The hearing officer found that the City's plans do not presently conform to the requirements in section 175.071(5). Appellants contend that rule 54.024(3) is invalid because section 175.071(5) is not intended to be applicable to local law plans but only chapter plans. The hearing officer found otherwise, specifically relying upon the invalid third prong of the Department's test.
The Department has conceded that section 175.071 was not applicable to local law plans prior to 1986 (see rule 4-54.045 at p. 859, supra). We find nothing in section 175.071, as amended in 1986, or any other section of chapter 175, that clearly expresses a legislative intent that this entire section preempt the legislative authority of the City to set standards and procedures regarding investments for local law plans that may differ from those prescribed for chapter plans. The use of the word "paragraph" rather than the word "section" in paragraph 4 of section 175.071(1)(b)4,[8] discussed previously (pp. 858-859, supra), directs only that the provisions of paragraph (1) of that section, not the whole of section 175.071, be applicable to local law plans. Section 175.071 was not applicable to local law plans prior to the 1986 amendments, and there is no express statement in any part of those amendments requiring application of the remaining provisions in section 175.071 to local law plans. We hold this rule invalid as exceeding delegated legislative authority.

Rule 4-54.029(2)
Rule 4-54.029(2) states:
The Department of Insurance is responsible for determining that a municipality is in compliance with the applicable requirements of Chapter 175 and Section 175.351, Florida Statutes, prior to distribution of Chapter 175 tax revenues. If *861 in the opinion of the Department of Insurance the information supplied by a municipality pursuant to Section 175.261 or 175.351(12) is inadequate for the Department to perform an actuarial valuation, or review an actuarial valuation, to determine the financial condition of the fund, or to otherwise determine whether a municipality is in compliance with the requirements of Chapter 175 or Section 175.351, the Department shall withhold distribution of Chapter 175 tax revenues to the municipality until adequate information is furnished and may request that an independent audit be performed by a Certified Public Accountant selected by the Department. The expense of any such audit shall be borne by the Department.
This rule was promulgated to implement, among others, sections 175.261, 175.321, and 175.351.
The City objects to the validity of this part of the rule on grounds that the Department does not have statutory authority "to perform" or "to review" an actuarial valuation of local law plans and demand that a separate audit be performed by an independent certified public accountant. Primarily, the City argues that section 175.261 is applicable only to chapter plans and contains provisions that require the trustees of such plans to file an independent audit with the Department each year. The City argues that section 175.351, being expressly applicable to local law plans, is the governing section because it requires the trustees of local law plans to submit certain information to the Department as a condition to receiving a share of the state funds for the then current year, including among other things, "A certified statement by an enrolled actuary showing the results of the latest triennial valuation of the plan and a copy of the detailed worksheets showing the computations used in arriving at the results." Section 175.351, the City says, contemplates that the actuarial valuation will be performed by an actuary other than the Department and requires that information be supplied to the Department for review only to permit the Department to insure that the City has complied with this statutory provision by having the valuation performed by others as required. The City argues emphatically that neither section 175.261 nor 175.351 authorizes the Department to determine the adequacy of the actuarial valuations submitted and to perform a new valuation, or to require an independent audit by a certified public accountant selected by the Department, as the challenged rule provides. Further, the City points out, the Florida Department of Administration, Bureau of Retirement, is charged by section 112.64(4), Florida Statutes, with the task of reviewing actuarial valuations for completeness, accuracy, and reasonableness of assumptions, and that division has the obligation of requesting adjustments or a section 120.57 hearing in the case of disputes with the Trustees. Thus, the City argues, the Department is authorized by the statute to withhold state moneys only if, in the Department's opinion, the information required by section 175.351(9-12) has not been provided to the Department.
The Department argues that it and the Department of Administration have dual responsibility with respect to the required audits and actuarial valuations, and that section 175.351(12) does require the Department to review and approve such actuarial information before paying out state moneys. It insists that the language of the rule fits well within the authority delegated to the Department by that section under its construction of the 1986 amendments by application of the third prong of its test.
The hearing officer upheld the validity of this rule upon the following analysis:
The challenge to proposed rules 4-54.029(2) and 4-54.048(3) is based upon Petitioners' position that the Department of Administration, not the Department of Insurance, has the authority to review actuarial valuations and actuarial impact statements for completeness, accuracy and reasonableness of assumptions. Section 112.63(4), Florida Statutes. However, the Department of Administration's authority is supplemental and not exclusive. Section 112.62, Florida Statutes. The Department of Insurance clearly is *862 authorized to insure compliance with subsections 1 through 12 of Section 175.351, pursuant to subsection 13, and this includes the requirement of actuarial soundness found in subsections 9 and 10. In addition Section 175.261(2), Florida Statutes, references the report of information to the Department which "it needs to complete an actuarial valuation of each fund."
It is apparent that the Legislature intended that the Department review the financial condition and actuarial soundness of both chapter and local law funds. To interpret Sections 175.261 and 175.351 otherwise would be to render them meaningless, and statutes should be construed in a manner that avoids a meaningless result. [Citation omitted.] The rules as proposed have therefore not been shown to be invalid.
(R. 518).
We hold that the hearing officer erred in treating section 175.261 as applicable to local law plans. The Department admits that section was not applicable to local law plans prior to 1986 (see rule 4-54.045 at p. 859, supra). The 1986 amendments did not specify that this section should apply to local law plans. Thus, it continues to apply only to chapter plans, while section 175.351 sets forth the reporting requirements for local law plans. Nothing stated in section 175.351 requires both the Department of Insurance and the Department of Administration to perform evaluations of the actuarial soundness of local law plans. We agree with the City's argument that as long as the actuarial information supplied to the Department facially shows that the City has complied with the requirements of section 175.351 and other expressly applicable statutes by having the actuarial valuation made by an appropriate actuary, the Department has no further responsibility to pass judgment on the substance of that valuation. For this reason, the Department's proposed rule exceeds the statutory authority found in section 175.351. Contrary to the hearing officer's conclusion that section 175.261 is rendered meaningless if not applied to local law plans, that section is given full effect when applied to chapter plans. We find no support elsewhere in chapter 175 for the Department's assertion of authority to pass on the sufficiency of such actuarial valuations apart from its erroneous implication of expanded authority pursuant to section 175.021 as amended. Therefore, the hearing officer erred in approving the validity of the proposed rule as presently phrased because it exceeds delegated legislative authority.

Rules 4-54.033 and 4-54.034
Rules 4-54.033 and 4-54.034, although challenged initially by appellants, facially apply only to chapter funds, and thus do not affect the local law funds of the City and other municipalities. We find it unnecessary to discuss these rules further.

Rule 4-54.035
Rule 4-54.035 deals with "optional forms of retirement income" and states quite simply, "Section 175.171, Florida Statutes, provides minimum standards for all Chapter Funds and all Local Law Funds." Its stated purpose is to implement section 175.171. Section 175.171(1) provides in part that "in lieu of the amount and form of retirement income payable in the event of normal retirement specified in Section 175.162" (a chapter plan retirement section), a firefighter may elect to receive retirement income in accordance with the enumerated options. Section 175.171(2) states that if a firefighter dies before his normal or early retirement date and has chosen an option under 175.171, his benefits will be paid in accordance with section 175.201 (a chapter plan provision allowing for refund of contributions to the firefighter's heirs).
The City argues that the proposed rule improperly applies section 175.171 to local law plans because it contradicts, first, the express provisions in section 175.321 defining which sections of chapter 175 are applicable to local law plans and, second, the explicit provision in section 175.351(6) allowing local law plans to incorporate death or survivor benefits "as the municipalities wish" so long as such benefits do not exceed the stated limitations. All parties apparently agree that the refund provisions *863 in section 175.201, referred to in section 175.171, apply only to chapter plans.
The Department and the hearing officer rely upon the Department's construction of section 175.021 as amended and the Department's invalid test as authority for applying section 175.171 by implication to local law plans.
We agree with the City's argument. Although section 175.171 was amended by chapter 86-41, the amending bill did not contain any expression by the legislature that section 175.171 would be applicable to local law plans. Since we have rejected the Department's construction of the 1986 amendments as making applicable by implication other provisions of chapter 175 to local law plans, we hold that section 175.171 is not applicable to local law plans and that rule 4-54.035 is invalid for exceeding the Department's delegated legislative authority.

Rule 4-54.036
Rule 4-54.036 deals with the designation of beneficiaries and has the stated purpose of implementing section 175.181, stating simply that section 175.181 "is applicable to all firefighters regardless of whether the firefighter participates in a Chapter Fund or Local Law Fund." The City's plans have designation of beneficiary provisions that are inconsistent with section 175.181. The City contends that section 175.181 is not made expressly applicable to local law plans and thus is applicable only to chapter plans.
As authority for this rule, the Department applies its three-pronged test based on its liberal construction of section 175.021 and also cites the second district's decision in Board of Trustees of the City of Dunedin Municipal Firefighters Retirement System v. Dulje, 453 So.2d 177 (Fla. 2d DCA 1984).
The City acknowledges that in Dulje the court held section 175.181 applicable to local law plans and does not quarrel with the logic of the decision based upon the facts stated in the court's opinion. Instead, it argues that here, unlike Dulje wherein the court found there was no death benefit under the chapter plan statutory provisions to which the language "the death benefit, if any" in section 175.181 could apply, the parties have stipulated that in fact there are ascertainable chapter plan death benefits to which such words apply, and points to sections 175.162.(3) and 175.201. Thus, the City argues, the rationale of that case is inapplicable to this case because the operative facts are different, and in the absence of an express provision for the application of section 175.181 to local law plans, the proposed rule attempting to do so constitutes an invalid exercise of delegated legislative authority.
The Department admits that section 175.181 was inapplicable to local law plans prior to 1986 (see rule 4-54.045, p. 859, supra). Nothing stated in the 1986 amendments expressly made this section applicable to local law plans. Of course, the proposed rule cannot be sustained on the basis of the invalid third prong of the Department's test and construction by implication of the 1986 amendment to section 175.021.
Nor does the decision in Dulje support the validity of proposed rule 4-54.036 in this instance. In that case the court specifically held that section 175.181 did not preempt the municipality's power to legislate on the subject of beneficiary designations. Its decision invalidating the provision for beneficiary designation in the City of Dunedin's plan was predicated upon a perceived conflict between the city ordinance in question and the provisions of section 175.181 based upon the conclusion that such section would be meaningless unless made applicable to the local law plan, stating that the chapter 175 provision for chapter plans "does not provide for specific death benefits" while local law plans may so provide under section 175.351(6). 453 So.2d at 178-79. The court then determined, for reasons not readily apparent from the face of the opinion, that chapter plan death benefit beneficiaries must always be designated in accordance with section 175.081(9), despite the limiting language in section 175.081 expressly making that section applicable only in those instances "when the board of trustees purchases annuity or life insurance contracts *864 to provide all or any part of the benefits as provided for by this act... ." It is apparent that the court's decision was made without consideration of either the fact, now stipulated in this case, that chapter plans do have ascertainable death benefit provisions to which section 175.181 applies, or the effect of sections 175.162(3) and 175.201, which explicitly recognize that death benefits are payable to designated beneficiaries under chapter plans or the explicit provisions of section 175.321 discussed at pages 858-859, supra. The absence of statutory language expressly making section 175.181 applicable to local law plans is entirely consistent with manifest statutory intent to make its provisions applicable only to chapter plans. Dulje is not, therefore, controlling precedent requiring the application of section 175.181 to all local law plans, so there is no conflict with the provisions of the City's plans.
We hold the Department's rule broadly applying section 175.181 to all firefighters participating in local law plans is invalid as exceeding the Department's delegated legislative authority.

Rule 4-54.037
Rule 4-54.037, pertaining to "disability retirement," declares that section 175.191 "establishes minimum standards for and is applicable to all firefighters within the State of Florida participating in any pension or retirement fund which receives State revenue provided for in Chapter 175, Florida Statutes," and, therefore, such section "is applicable to all firefighters regardless of whether participation is in a Chapter Fund or a Local Law Fund." The City presented evidence at the hearing that the provisions in its plans for disability retirement are significantly different from the requirements in section 175.191 and that application of that section to its plans would have a significant adverse financial impact on its plans. It points out that section 175.351(6) specifically authorizes local law plans to incorporate disability benefits as they wish, and that section 175.191 does not contain any reference to local law plans. Thus, the City and the League argue, section 175.191 was unlawfully applied to local law plans by this rule under the Department's impermissible construction of section 175.021.
The Department argues that section 175.351 provides that all local law plans must provide both retirement and disability income for firefighters, and since section 175.191 provides minimum standards for line-of-duty and non-line-of-duty disability, the proposed rule is reasonably related to the legislative purpose and is not arbitrary and capricious.
The Department admits that section 175.191 was not applicable to local law plans prior to 1986 (see rule 4-54.045 at p. 859, supra). Nothing stated in chapter 175 as amended in 1986 expressly indicates that the minimum standards set forth in section 175.191 should be applicable to local law plans. On the contrary, section 175.351 expressly requires local law plans to provide for disability income as well as retirement income, but does not expressly make section 175.191 applicable to local law plans in respect to minimum benefits. The statutory scheme intends that local law plans contain disability provisions but leaves the substance of those provisions for determination by special act or local ordinance under the powers reserved to municipalities. We hold this rule invalid as exceeding delegated legislative authority.

Rule 4-54.039
Rule 4-54.039 deals with "disability in line of duty" and simply states that section 175.231 "is applicable to all Chapter Funds and all Local Law Funds." Appellants argue that the rule is invalid because section 175.231 is not expressly made applicable to local law plans. The Department would sustain the rule based on its construction of the 1986 amendments, which we have rejected, and upon the argument that this rule is but "a continuation of section 4-54.12, effective since 1982 uniformly administered and not challenged by the League, the City or anyone else." The Department further contends, "There is nothing new with this section" and that, "The presumptions established in Section 175.231 are minimum standards which have been consistently applied to all pension *865 funds requiring them to meet these minimums." The Department also points out that the City's plans meet or exceed the minimums provided in section 175.231.
We hold this rule invalid for essentially the same reasons expressed as to rule 4-54.037. Nothing set forth in chapter 175 makes section 175.231 expressly applicable to local law plans. While, in the exercise of prudence, municipalities have been making provisions in their local law plans that meet or exceed the requirements of this section, that practice does not supplant the needed statutory authority for the Department to make this section's minimum standards applicable to such plans. This practice in local law plans is consistent with the notion that municipalities are free to legislate on this matter independent of standards in section 175.231. We also note that this proposed rule is characterized as a "new" rule in the notice published in Florida Administrative Weekly, vol. 12, at pp. 4411-12. That the rule may be essentially a continuation of rule 4-54.12, effective since 1982, also does not supplant the needed statutory authority. Whether rule 4-54.12 remains effective and a viable means for the Department to apply minimum requirements meeting section 175.231 to local law plans is not within the scope of this rule challenge proceeding and is not decided by us.

Rule 4-54.040
Rule 4-54.040 relates to "employment records" and purports to implement section 175.251. It proposes to make that section "applicable to employment records of all Chapter Funds and all Local Law Funds." The League contends that this rule is invalid because nothing in chapter 175 expressly makes it applicable to local law plans. We agree and hold the proposed rule invalid for reasons previously expressed. The Department admits that section 175.251 was inapplicable to local law plans prior to 1986 (see rule 4-54.045 at p. 859, supra). Nothing in the 1986 amendments expressly makes it applicable to local law plans. The Department's reliance on its expansive interpretation of section 175.021 to uphold the rule is without merit. The rule exceeds delegated legislative authority and is invalid.
There may well be some merit to the Department's contention that it must be able to regulate requirements for employment records of local law plans, as well as chapter plans, if the Department is to fulfill its responsibilities under various provisions in chapter 175. But we conclude that the Department must look to statutory provisions other than section 175.251 for authority to delineate by rule the type and content of employment records it may require of local law plans in fulfilling such responsibilities. After adoption of a rule, the Department may not rely on statutory provisions not cited in the proposed rule as statutory authority. See Capeletti Bros., Inc. v. Department of Transportation, 499 So.2d 855 (Fla. 1st DCA), rev. denied, 509 So.2d 1117 (Fla. 1987).[9] We cannot now uphold this rule on the basis of uncited statutory authority.

Rule 4-54.041
Rule 4-54.041 deals with the report to the Department required by section 175.261 and proposes to make that section "applicable to all Chapter Funds and all Local Law Funds." Additionally, the proposed rule provides:
(2) In addition to any other report required under Section 175.261, Florida Statutes, or Section 4-54.011 of these rules, every statement of disbursement required to be filed each year by municipalities *866 receiving Chapter 175 tax revenue shall reflect all changes to the fund including but not limited to administrative or handling fees paid to insurance companies or investment managers.
(3) The certified public accountant to which reference is made in Section 175.261(1)(b), Florida Statutes, shall be independent of the municipality and the board of trustees.
The City and the League object to the validity of this rule on grounds that section 175.261 is not applicable to local law plans but is applicable only to chapter plans and has been so treated for many years. They argue that since 1963 chapter 175 has contained two separate reporting sections applicable, respectively, to chapter plans and to local law plans. Chapter plans have been required to report to the Department of Insurance in accordance with section 175.261. Local law plans have been required to report to the Department in accordance with section 175.351. Section 175.351(12) contains extensive but specific requirements for local law plans reporting to the Department, including: an independent audit by a certified public accountant of the financial condition of the plan, a certified statement of investments, and a description of the methods used in valuing the investments; a statistical exhibit showing the total number of firefighters, the number in the plan, and the number ineligible with the reasons for ineligibility; a certified statement describing the methods, factors, and actuarial assumptions used in determining the cost; a certified statement of an enrolled actuary showing the results of the latest triennial valuation of the plan and a copy of the detailed worksheets showing the computations used in arriving at the results; and a statement of the amount of income contributed by the municipality or other source to the plan for the most recent, as well as the current, fiscal year. The City points out that the most significant difference between the reporting requirements for chapter plans under section 175.261 and local law plans under 175.351 is that chapter plans have to provide sufficient information to allow the Department to perform its own actuarial review, while local law plans have to provide a completed actuarial valuation made by others. The City contends that the Department is seeking, by this proposed rule, to exercise authority to perform actuarial valuations and to withhold tax moneys from local law plans if, in its opinion, the information provided under section 175.351 is insufficient for the Department itself to perform an actuarial valuation. The Department, it is argued, thereby invalidly attempts to apply section 175.261 to local law plans in direct conflict with section 175.351, which does not give the department such authority.
Our discussion of the validity of proposed rule 4-54.029(2), supra, applies to the validity of rule 4-54.041. The Department admits section 175.261 was not applicable to local law plans prior to 1986 (see rule 4-54.045 at p. 859, supra). Nothing in chapter 175 as amended in 1986 expressly makes section 175.261 applicable to local law plans, and we have held invalid the Department's and the hearing officer's implications from amended section 175.021 as authority to do so. Additionally, we note that section 175.261 contains several express provisions that indicate applicability only to chapter plans. For example, it provides in paragraph (1)(a) that the report required by that section shall indicate "whether in fact the municipality is within the provisions of s. 175.041." Section 175.041 establishes chapter plans and relates to such plans only. Similarly, paragraph (2) of that section directs that the expense of the required actuarial valuation shall be borne by the "fund" (singular) "established by ss. 175.041 and 175.121." This express reference to a chapter fund, coupled with the fact that this section was significantly amended in 1986 but contained no express indication of applicability to local law plans, amounts to clear legislative intent that this section continue to apply only to chapter plans. We hold, therefore, that rule 4-54.041 is invalid as exceeding the Department's delegated legislative authority.

Rule 4-54.047
Rule 4-54.047, which relates to the "prohibition of discrimination in benefit *867 formulas," simply states that section 175.333 "is applicable to all Chapter Funds and Local Law Funds." Section 175.333 expressly prohibits "a plan established under the provisions of this chapter" from discriminating in its benefit formula. Local law plans are not "established under the provisions of this chapter" but are established by special acts or local ordinances. This section was substantially amended by chapter 86-41 to afford a retired member the right to change his designated beneficiary twice after he begins to receive benefits. But neither the amendment nor any other provision in chapter 175 expressly makes this section applicable to local law plans.
The City and the League contend that this rule invalidly attempts to apply section 175.333 to local law plans despite the fact that nothing in chapter 175 preempts municipalities from legislating in regard to the designation of beneficiaries. The City points out that the anti-discrimination provision in section 175.333 is also found in section 175.351(7), which is expressly made applicable to local law plans. The Department defends this rule on the basis of its broad interpretation of amended section 175.021 and the consistency of the rule with overall statutory purpose.
Section 175.333 shows on its face that it is applicable only to "plans established under the provisions of this chapter," meaning chapter plans. Agreeing with appellants' argument, we hold that section 175.333 is applicable only to chapter plans and that the proposed rule is, therefore, invalid as exceeding delegated legislative authority.

Rules 4-54.048 and 4-54.049
Rule 4-54.048 is entitled "Municipalities Having Their Own Plans for Firefighters" and recites that it is intended to implement section 175.351. This proposed rule contains some eleven separate provisions regulating local law plans administered pursuant to section 175.351. The City and the League challenged several numbered paragraphs of this rule in the proceeding below. On appeal their briefs have addressed the alleged invalidity of only paragraphs (3), (5), (6) and (7) of the rule.[10]
Appellants argue that paragraph (3) is invalid because it, like rule 4-54.029(2), authorizes the Department to evaluate and perform actuarial valuations of local law plans. See the discussion under that rule for the hearing officer's reasoning with respect to the validity of this paragraph (supra at pp. 859-860). The Department justifies this paragraph of the rule on the basis of its expansive interpretation of amended section 175.021.
*868 We agree with appellants, for the reasons set forth above in respect to the invalidity of proposed rule 4.54.029(2) (at pp. 860-862) and proposed rule 4-54.041 (at pp. 865-866), that paragraph (3) of rule 4-54.048 exceeds the authority delegated under section 175.351 regarding the scope of the Department's power to review the triennial actuarial valuations each local law plan is required to submit to the Department pursuant to that section. We hold this paragraph of the rule invalid as presently phrased.
Paragraph (5) of proposed rule 4-54.048 defines the term "extra benefits" as used in section 175.351(13)[11] to mean "benefits in addition to or greater than those provided to other municipal employees" and excludes therefrom the term "early retirement at a reduced pension." The City argues that this paragraph is invalid because it "makes no sense in the context of a local law plan solely for the benefit of firemen" and is thus arbitrary and capricious. The City also challenges paragraph (7) of the proposed rule, which defines the meaning of the phrase "as approved by a majority of firefighters of the municipality affected" as used in section 175.351(13), as being an arbitrary and capricious attempt to rewrite that section contrary to the meaning of the statute.
The Department argues that paragraph (5) "is simply a continuation of existing Rule 4-54.15," which was adopted in 1982 and is still in effect without challenge. Moreover, it points out, this definition is in accord with the opinions in City of Miami v. Carter, 105 So.2d 5 (Fla. 1958), and City of Hollywood v. Hollywood Lodge # 21, Fraternal Order of Police, 329 So.2d 366 (Fla. 4th DCA 1976). Paragraph (7), the Department contends, is a reasonable interpretation of that phrase, contrary to the meaningless interpretation suggested by the City, and accords with the opinion in the City of Hollywood case, supra.
The hearing officer upheld paragraph (5) upon the conclusion that the definition is reasonable and within a permissible interpretation of the statute, primarily by giving "great deference" to the Department's "application of its expertise in defining such statutory terms. Sans Souci v. Division of Florida Land Sales and Condominiums, 421 So.2d 623, 626 (Fla. 1st DCA 1982)." (R. 519) But the hearing officer did not describe the particular Department expertise needed to interpret this particular phrase, and we are unable to perceive such need.
While the statute (see footnote 11 at p. 868, supra) obviously can be interpreted to allow extra benefits to be determined in terms of what is paid to other municipal employees where the plan involved covers such other employees as well as firefighters, we find nothing in section 175.351 or any other provision in chapter 175 to suggest that the measurement of benefits, whether "extra" or minimum, should be made in terms of what is paid to other municipal employees. Hence, we find no authority for the Department to limit the meaning of that term to a comparison of such benefits. Nothing in the record suggests that it would be impermissible under section 175.351(13) for a municipality, as an inducement for early retirement, to provide an actuarially measurable increase in early retirement benefits over the amount paid upon normal retirement to be funded by the income referred to in that section. Moreover, as the City argues, in those instances where a local law plan covers only firefighters, the reference in this paragraph to other municipal employees is left completely open to speculation, for it does not identify such other employees; yet the *869 rule is not limited in application to plans covering both kinds of employees. We hold paragraph (5) as presently written to be arbitrary and inconsistent with the meaning of the statute, and thus invalid. See Department of Administration, Division of Retirement v. Albanese, 445 So.2d 639 (Fla. 1st DCA 1984).
To the extent that the subject of paragraph (5) of this proposed rule is but a continuation of, and thus covered by, existing rule 4-54.15 not challenged in these proceedings, as the Department contends, we express no opinion on the validity or effectiveness of that rule.
In respect to paragraph (7) of proposed rule 4-54.048, the hearing officer, based on the testimony of appellants' witness, Dr. John Fenstermaker, construed section 175.351(13) as follows:
[T]he phrase "approved by a majority of the firefighters" ... modifies the nouns "board of trustees of the pension fund" and "official pension committee," instead of the verb in the sentence. However, the phrase does not mean that a majority of firefighters must approve the membership of the board of trustees or official pension committee. Rather, it means that a majority must approve action by the board of trustees or committee relative to the placement or use of certain income. A reasonable construction of the statute is that a majority approval is required for the board of trustees or committee to act, but not that the make-up or membership of these bodies must be approved each time they propose to place or use certain income from the premium tax referred to in said statute.
Accordingly, the hearing officer found this paragraph to be a valid interpretation of the enabling statute. We find no merit to the City's objection to this interpretation of the statute. We approve the hearing officer's construction, and affirm the validity of this paragraph of the proposed rule.
Finally, appellants challenge the validity of rule 4-54.048(6) and rule 4-54.049, both of which would apply section 175.361 to local law plans as well as chapter plans. This section of the statute sets forth certain requirements and procedures to be followed "upon termination of the plan" but contains no express reference to local law plans. There is no provision in chapter 175 expressly making this section applicable to local law plans. For the reasons previously set forth, we hold that section 175.361 is applicable only to chapter plans, and thus find these provisions in the proposed rules invalid as beyond delegated legislative authority.

IV.

ECONOMIC IMPACT STATEMENT
Appellants' remaining point on appeal challenges the sufficiency of the Department's economic impact statement accompanying the proposed rules under review pursuant to section 120.54(2). The parties stipulated, and the hearing officer found, that the application of sections 175.071, 175.081, 175.191, 175.231, 175.261, 175.333 and 175.361 to local law plans would have a significant economic impact, as defined in section 120.54, on a number of local law plans, including those of the City. The Department's economic impact statement recites that the economic impact of the 1986 amendments "was fully addressed in the legislation and enactment of Chapter 86-41, Laws of Florida" and that, "These rules, which augment, interpret, and provide for definitions, application and enforcement of" chapter 175 as so amended "will have no additional impact or nominal additional impact on those entities affected by Chapter 86-41... ." (R. 509-10). Because we have held that those portions of the proposed rules purporting to apply the above cited sections of chapter 175 to local law plans are invalid as beyond the Department's delegated legislative authority, we find it unnecessary to decide this point.
The appealed final order is reversed in part, and the cause is remanded for entry of an order in conformance with this opinion.
REVERSED AND REMANDED.
*870 SHIVERS, J., and PEARSON, TILLMAN (Ret'd), Associate Judge, concur.
NOTES
[1] Proposed rules 4-14.036 and 4-54.027 were held invalid, and the Department of Insurance does not contest that ruling on appeal. The Department withdrew these rules pursuant to section 120.54(4)(c) and gave appropriate notice in the April 10, 1987 issue of Florida Administrative Weekly.
[2] Proposed rule 4-54.019, which was not challenged by appellants, defines "Chapter Plan" as "a municipal firefighters pension trust fund created by Chapter 175, Florida Statutes, and excludes a municipal firefighters pension trust fund created by special act of the legislature or municipal ordinance." A similar definition is found in proposed rule 4-14.028(1), which also was not challenged.
[3] Rule 4-54.019(2), which was not challenged by appellants, defines "Local Law Plan" as "a municipal firefighters' pension trust fund created by special act of the legislature or municipal ordinance which receives state excise tax revenue from the tax fund established in Sections 175.101-175.121 and 175.131-175.151, Florida Statutes." A similar definition is found in unchallenged rule 4-14.028(2).
[4] The League represents more than 390 cities throughout the state of Florida. As part of their municipal administration, many of these cities maintain firefighter pension funds that receive premium tax receipts pursuant to chapter 185. A number of these cities maintain local law plans as defined in proposed rules 4-14.028 and 4-54.019, while a number of the League's member cities maintain chapter law plans as defined in these same proposed rules. Such plans are required by the proposed rules to meet certain standards that affect the cities' responsibilities in relation to the plans. The League is required to work for the effective administration of municipal government on behalf of its member municipalities, and thus it is substantially affected by the proposed rules. Appellees do not contest the League's standing to appeal and maintain this rule challenge proceeding pursuant to section 120.54.
[5] See note 1, supra.
[6] In a separate proceeding filed in the Leon County circuit court, several other cities alleged the facial invalidity of chapters 86-41 and 86-42, Laws of Florida, on constitutional grounds. The trial court's decision holding these chapters to be facially constitutional was affirmed, with one exception not material to the issues on this appeal, in City of Orlando v. State of Florida Department of Insurance, 528 So.2d 468 (Fla. 1st DCA 1988).
[7] "This chapter hereby establishes minimum standards for the operation and funding of municipal firefighters' pension trust fund systems and plans."
[8] "This paragraph shall apply to all boards of trustees and participants."
[9] In Capeletti, we stated:

Section 120.54(7), Florida Statutes (1985), requires that each administrative rule be accompanied by a "reference to the section or subsection of the Florida Statutes ... being implemented, interpreted, or made specific." ... Although DOT points to numerous other statutory programs which indicate the state's policy of nondiscrimination against women, these statutes are not cited as statutory authority for the rule and do not give DOT the power to implement rule 14-78.03. The omission may be a legislative oversight; nevertheless, courts should not rewrite legislation to cure an omission .. . just because it seems to fit overall legislative policy. An administrative rule cannot be contrary to or enlarge a provision of a statute, no matter how admirable the goal may be.
499 So.2d at 857.
[10] These paragraphs of the proposed rule read:

(3) If a Local Law Fund is part of a general pension plan for other municipal employees, in order to participate in the distribution of Chapter 175 tax revenues the entire plan must be actuarially sound and must satisfy all requirements of Section 175.351 together with all other applicable provisions of Chapters 175 and 112, Florida Statutes, including but not limited to the requirement that municipal contributions sufficient to fund the normal cost and the 40 year amortization amount must be paid annually on a current basis.
* * * * * *
(5) The term "extra benefits" as used in Section 175.351(13), Florida Statutes, means benefits in addition to or greater than those provided to other municipal employees. Early retirement at a reduced pension is not an "extra benefit" within the intent of the statute.
(6) The provisions of Section 175.361, Florida Statutes, shall apply to all retirement plans receiving monies under Chapter 175, including all Local Law Plans.
(7) Subsection 175.351(13) uses the phrase "as approved by a majority of firefighters of the municipality affected" on two separate occasions. In each instance, that phrase modifies and refers to:
(a) "may place the income from the premium tax in s. 175.101 in its existing pension fund ... where it shall become an integral part of that fund"; or
(b) "may use such income to pay extra benefits to the firefighters included in the fund."
1. The phrase quoted in the introductory paragraph of this subsection neither modifies nor refers to "the pension fund" or "the official pension committee," as the same is set forth in that subsection.
2. In any event, state contributions, whether deposited into an existing fund or into a supplemental fund, as approved by the members of the pension fund, shall be used to purchase extra benefits for police officers and/or firefighters. These state monies may not be used in any way for general employees.
[11] Section 175.531(13) provides:

When a municipality has a firefighters' retirement fund, which in the opinion of the Department of Insurance meets the standards set forth in sections (1) through (12), the board of trustees of the pension fund, as approved by a majority of firefighters of the municipality affected, or the official pension committee, as approved by a majority of firefighters of the municipality affected, may place the income from the premium tax in s. 175.101 in its existing pension fund for the sole and exclusive use of its firefighters (or for firefighters and police officers where included), where it shall become an integral part of that fund, or may use such income to pay extra benefits to the firefighters included in that fund.